UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **AMERIPRISE FINANCIAL SERVICES, INC.,**<br><br>                      **Plaintiff,**<br><br>-against-<br><br>**TODD R. SCHROEDER,**<br><br>                      **Defendant.** | **CIVIL ACTION NO:**<br><br>**AUGUST 26, 2010** |

## COMPLAINT

1. Plaintiff, Ameriprise Financial Services, Inc. ("Ameriprise"), by its undersigned attorneys, brings the following Complaint for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure against Defendant Todd R. Schroeder ("Schroeder") for breach of contract, misappropriation and conversation of trade secrets, customer lists, and confidential business information, fraud, breach of fiduciary duty and unfair competition.

2. Ameriprise seeks a temporary restraining order and preliminary injunction to prevent Schroeder's further breach of his non-solicitation and confidentiality agreements. Apparently at the direction of his new employer, MetLife Securities, Inc. ("MetLife"), prior to leaving Ameriprise's employment, Schroeder took with him customer files and information, despite his written agreement expressly prohibiting him from taking such information.

Schroeder and MetLife are now using this information to solicit Amerprise's customers, again in violation of Schroeder's express non-solicitation agreement.

3.  Ameriprise is filing, simultaneously with the filing of this action, a Statement of Claim with FINRA Dispute Resolution, commencing an arbitration in which Ameriprise will principally prosecute its claims against both Schroeder and MetLife. Both are subject to arbitration before FINRA, which specifically provides that parties seeking temporary injunctive relief to maintain the status quo pending arbitration are to do so from a court of competent jurisdiction.

## PARTIES

4.  Plaintiff Ameriprise is a broker-dealer and a member of FINRA. Ameriprise is incorporated in Delaware, and maintains its principal place of business at 1099 Ameriprise Financial Center, Minneapolis, Minnesota 55474. Ameriprise conducts business in its offices nationwide, including in its office in Norwalk, Connecticut.

5.  Upon information and belief, Defendant Schroeder is a citizen of Connecticut. He worked for Ameriprise in Norwalk, Connecticut and is currently employed as a registered representative by the "Barnum Financial Group," an "office" of MetLife Securities, Inc., in Shelton, Connecticut.

## JURISDICTION AND VENUE

6.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $65,000.00, exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil

Procedure 65. Venue is proper in this Court under 28 U.S.C. § 1391 as the complained of conduct arose in this judicial district.

## FACTS

### A. *SCHROEDER'S EMPLOYMENT AGREEMENT AND MISCONDUCT*

7. Ameriprise is a financial services company with a nationwide network of financial advisors. It operates offices throughout Connecticut, including the office located at 501 Merritt 7, Norwalk, Connecticut, where Defendant Schroeder was employed until his abrupt resignation on Monday, August 23, 2010.

8. Schroeder was originally hired by IDS Life Insurance Company/American Express Financial Advisors, Inc. on or about August 25, 2003, with no prior experience in the securities industry.

9. Since that time he has worked as a financial advisor based at the company's Norwalk, Connecticut offices.

10. On or about August 25, 2003, Schroeder executed a "Confidentiality Agreement" in which he agreed that customer lists and information are confidential and that he would, "… safeguard all Confidential Information and not reveal Confidential Information of the Company to any third party, within or outside the Company, except to the extent necessarily required by [his] normal job duties." He also agreed that he would not, "… discuss and/or provide Confidential Information and other confidential Company business or customer business or data with sources outside the Company…" A true copy of the Confidentiality Agreement is attached as Exhibit "A" to the Declaration of Maureen M. Green in Support of Application for Injunctive Relief (the "Green Declaration").

3

11. On or about September 3, 2003, Schroeder executed an American Express Financial Advisors Inc. "Financial Advisor's Agreement," which states, in pertinent part at Section IV, that:

> 1(a) All records and Materials are the property of the Company, an Affiliate or one of their associated companies. All rights to Records and Materials that you prepare or create in connection with the performance of this agreement are hereby assigned to the Company. You agree that you will not reproduce or allow the reproduction of Records and Materials in any manner whatsoever, except pursuant to written policy or consent of the Company.
>
> . . .
>
> (c) While this Agreement is in effect and after it ends, you will not reveal the contents of any Company property or allow them to be revealed, except in connection with carrying out your duties under this Agreement. You will not reveal the names and addresses of Company clients or any other information about them, including financial information. You will also not reveal this information about potential Clients, to whom a presentation has been made by an employee or any other person selling or distributing Products or Services offered by the Company or its Affiliates, who might reasonably be expected to do business with the Company or an Affiliate. You will not allow any of this information about clients or potential clients to be revealed.
>
> (d) You agree that the identity of Clients and potential Clients is confidential information and a "trade secret" as defined by law. For one year after this agreement ends, you agree not to use any such information in connection with any business in competition with the Company or an Affiliate.
>
> (e) You specifically acknowledge that, pursuant to this Agreement, you will receive valuable and confidential trade secret information, including, without limitation, information regarding the operational, sales, promotional, and marketing methods and techniques of [the] Company. In recognition and in consideration for these and other benefits, to protect the confidentiality of Company's Client information and to protect Company's goodwill, you covenant that (a) during the term of this Agreement, and (b) for one year after the expiration or termination of this Agreement in the geographic area of one hundred (100) miles of the office from which you operated, you shall not, either directly or indirectly, for yourself or through, on behalf of, or in conjunction with any person or entity:
>
>> (4) Solicit or receive compensation from or related to, any Clients that you contacted, serviced, or learned about while operating under

4

>       this Agreement or any Rider to this Agreement to open an account other than an (sic) Company account or sell any investment, financial or insurance Products or Services to such Clients.
> (7)   Disclose any trade secret or other proprietary information of Company or an Affiliate or Issuer or use any trade secret or other proprietary information in competition with Company or its Affiliates or Issuers.

(Green Declaration, Exhibit "B").

12. On or about March 1, 2006, Schroeder entered into a "P1 Manager Rider" as a result of additional management responsibilities he was given. The agreement reiterated his non-solicitation agreement and responsibility not to take any action to damage the goodwill of the Company. (Green Declaration, Exhibit "C").

13. On or about March 3, 2009 Ameriprise purchase a book of business for Schroeder from a retiring Ameriprise broker for approximately $32,500.00.

14. On Friday, August 20, 2010, Schroeder called his branch manager (who he knew was out of the office) and told her he was "thinking" about leaving.

15. On Monday, August 23, 2010, Schroeder arrived at the office and gave his branch manager a brief resignation letter. (Green Declaration, Exhibit "D").

16. Later that day, the branch manager, Maureen Green, was called by a customer, who informed her that she had a received a solicitation package including an ACAT (Automated Customer Account Transfer form) from Schroeder on Thursday, August 19, 2010, but that she had decided to stay with Ameriprise.

17. Another Ameriprise broker, Ms. Lee Hunter, received a call from a customer who stated that Schroeder had called him on Friday, August 20, 2010 and solicited him to transfer his account to Schroeder's new employer. The customer added that he wanted to stay at Ameriprise and wanted to be assigned to a new broker.

18.     Schroeder resigned on Tuesday, August 24, 2010.

### B. *SCHROEDER'S USE OF AMERIPRISE'S RESOURCES*

19.     The names of Ameriprise's customers are not publicly available. To cultivate and maintain its customers, Ameriprise engages in extensive advertising in various media as well as following up on referenced from existing clients. In the time Schroeder was employed by the company, Ameriprise expended many hundreds of thousands of dollars on advertising and marketing. As a direct result of Ameriprise's extensive efforts, it has developed customer lists containing tens of thousands of names and lists of potential customers several times longer. Ameriprise specifically relies upon its employees – including Schroeder – to develop and service accounts on behalf of the company.

20.     In developing and servicing customers, Schroeder took full advantage of Ameriprise's reputation and good will, as well as its products, offices, computer systems, market reporting services, sales assistants, secretarial and other support services, clearing services, operational systems, and access to experts in asset management, tax, estate planning and insurance. Without these resources, she would have been unable to be a financial advisor at all.

21.     Ameriprise's customers, moreover, entrust the company with confidential personal financial information, such as investment objectives, annual income and asset figures. These customers have also engaged in various securities transactions through Ameriprise, records for which are maintained by Ameriprise in conformance with FINRA and U.S. Securities and Exchange Commission record-keeping requirements. This information is not available in any public source and constitutes highly confidential information. It is, moreover, financial

information of a highly personal and private nature that Ameriprise's customers have not consented to share with other brokerage firms.

## IRREPARABLE HARM

22. As discussed above, Schroeder took Ameriprise's customer files and has been using the customer information he took to MetLife to solicit customers in violation of his employment agreement.

23. Without an injunction, the existence of irreparable harm is beyond doubt. Schroeder's solicitation of Ameriprise's customers – through the use of Ameriprise's own confidential customer information – will destroy the benefits of the resources it has invested over the years to develop these customer relationships. No price tag can be placed on the destruction of the benefits Ameriprise has accrued from such efforts and it is impossible to determine how much Ameriprise stands to lose as a result of Schroeder's misconduct.

24. Specifically, unless Schroeder is enjoined from using Ameriprise's property to improperly solicit Ameriprise's customers, Ameriprise will be irreparably harmed by the disclosure of its trade secrets, customer lists, and other Ameriprise confidential information, as well as present and future economic loss that cannot be calculated.

25. A Temporary Restraining Order and Preliminary Injunction are, therefore, necessary to maintain the status quo in this proceeding and to prevent further irreparable harm to Ameriprise.

## COUNT ONE

### (Injunctive Relief)

26. Ameriprise repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

27. The foregoing conduct constitutes breach of restrictive covenants contained in the written contracts entered into between Schroeder and Ameriprise.

28. Schroeder's conduct has violated the non-solicitation, confidentiality, and non-disclosure agreements he entered into with Ameriprise.

29. As a direct and proximate result of these breaches, Amerprise has suffered and continues to suffer immediate, irreparable harm that can only be effectively remedied by the issuance of injunctive relief.

## COUNT TWO

### (Violation of the Minnesota Uniform Trade Secrets Act)

30. Ameriprise repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

31. The foregoing conduct constitutes misappropriation and conversation of trade secrets, customer lists, and confidential business information in violation of Minnesota Statues §325C.01.

32. As a direct and proximate result of these statutory breaches, Ameriprise has been harmed.

## COUNT THREE

### (Breach of Fiduciary Duty)

33. Ameriprise repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

34. By soliciting customers to transfer their accounts prior to his resignation, Schroeder breached the fiduciary duty he owed to Ameriprise by competing with Ameriprise while he was still and employee.

35. As a direct and proximate result of this breach of fiduciary duty, Amerprise has suffered and continues to suffer harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Ameriprise respectfully requests that a Temporary Restraining Order and/or a Preliminary Injunction issue immediately:

(1) Directing Schroeder, along with his agents, employees and representatives, and all those in active concert or participation with Schroeder and/or his agents, employees and representatives, to return to Ameriprise within 24 hours any and all documents and computerized materials, including without limitation all customer information of any sort, and copies and/or extracts thereof, (the "Confidential Information") removed at any time from Ameriprise and further directing them not to retain any copies thereof, and to permanently remove any and all such information (including data contained on computer software, hard drives and/or personal digital assistants) from their possession and custody;

(2) enjoining Schroeder, along with his agents, employees and representatives, and all those in active concert or participation with Schroeder and/or their agents, employees and representatives, from (a) using or disclosing in any way any of the Confidential Information to solicit Ameriprise customers, and (b) using in any way or furnishing to anyone any of the Confidential Information;

(3) enjoining Schroeder, along with his agents, employees and representatives, and anyone in active concert or participation with him, from soliciting any Ameriprise customer Schroeder served or whose name became known to him during his employment with Ameriprise; and

(4) for such other and further relief as the Court may deem just and proper.

**WHEREFORE** by virtue of the foregoing acts complained of, Ameriprise demands judgment in its favor and against Todd Schroeder for injunctive relief pending the arbitration to be held in accordance with Rule 13804 of the Code of Arbitration Procedure of FINRA Dispute Resolution.

AMERIPRISE FINANCIAL SERVICES, INC.

By: /s/*John E. MacDonald, Esquire*
JOHN E. MACDONALD, ESQ. (CT 14853)
STARK & STARK, PC
993 Lenox Drive, Bldg. 2
P.O. Box 5315
Princeton, NJ 08543-5315
(609) 895-7292 Phone
(609) 895-7395 Fax
jmacdonald@stark-stark.com
Attorneys for Plaintiff